# IN THE COURT OF APPEALS OF IOWA

No. 16-0171
Filed June 7, 2017

**STACEY JEAN O'HARA,**
          Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
          Respondent-Appellee.
_____

          Appeal from the Iowa District Court for Scott County, Mark D. Cleve,
Judge.


          Stacey Jean O'Hara appeals from the dismissal of her application for
postconviction relief. **AFFIRMED.**


          Mark C. Smith, State Appellate Defender, and Bradley M. Bender,
Assistant Appellate Defender, for appellant.

          Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant
Attorney General, for appellee State.


          Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**DANILSON, Chief Judge.**

Stacey Jean O'Hara appeals from the dismissal of her application for postconviction relief. As background, pursuant to a plea agreement, O'Hara agreed to plead guilty to the amended charge of second-degree robbery, third-degree burglary, lottery ticket theft, and assault on a peace officer. The State agreed to dismiss a conspiracy-to-commit-a-felony charge and to recommend that all sentences run concurrently to each other. Pursuant to the plea agreement, O'Hara acknowledged that she understood that she must serve seven-tenths of the maximum ten-year sentence on the robbery charge before she would be eligible for work release or parole.

The court accepted the plea on March 16, 2013. O'Hara requested immediate sentencing and waived her right to a fifteen-day delay before sentencing, the use of a presentence investigation report at sentencing, and the right to file a motion in arrest of judgment. During the plea colloquy, these exchanges occurred:

> THE COURT: Now, you're charged under Count 2 with robbery in the first degree and you're pleading guilty to robbery in the second degree. Robbery in the second degree is a Class C felony, which means that the maximum penalty you can be subject to is to be put into prison for a period not to exceed ten years, fined at least $1000, but not more than $10,000. There would be a 35 percent surcharge assessed on any fine that's imposed.
> Iowa Code section 702.11 [(2011)] defines robbery in the second degree as a forcible felony. Under Iowa law because this is a forcible felony, you cannot be granted a deferred judgment or . . . have your prison sentence suspended and be placed on supervised probation. In other words, prison time is mandatory.
> Also, Iowa Code section 902.12(5) provides that you cannot be granted any type of parole or work release until you've served seven-tenths or 70 percent of the maximum term; and because the maximum term in this case is ten years, that means you would have to serve at least seven years before release. Do you understand all of that?

[O'HARA]: Yes.

. . . .

THE COURT: Now, because you're pleading guilty to four separate crimes, the sentencing judge will have to decide whether to run those sentences together, which means concurrent, or back to back or some fashion that several of them follow the other. Do you understand that as well?

[O'HARA]: Yes.

. . . .

THE COURT: Mr. Ingham [defense counsel], do you know any defenses your client would have other than general denial?

MR. INGHAM: Yes, Your Honor. Due to Ms. O'Hara's history and the information gathered in the investigation of this case, I explored both diminished capacity and diminished responsibility defenses. Due to our establishing a psychiatric or psychological defense, we had Ms. O'Hara evaluated by Dr. Witherspoon, a forensic psychologist. He had issued two reports, one about competency to stand trial or diminished health or diminished responsibility defenses and indicated—a report that indicated there was insufficient evidence to proceed on either of those two defenses, even though they are available, in our opinion, and Mr.—Dr. Witherspoon's opinion cannot be sustained.[1]

THE COURT: Thank you. Ms. O'Hara, do you have any reason to disagree with the statement your attorney just made?

[O'HARA]: No.

. . . .

THE COURT: Ms. O'Hara, are you satisfied with the services of Mr. Ingham as your attorney?

[O'HARA]: Yes.

. . . .

THE COURT: All right. And, Ms. O'Hara, just so I'm satisfied, I understand that throughout this process, you had some issues with some substance abuse issues and you are on some

---

[1] Dr. Kirk Witherspoon's competency report provides in part:

Ms. O'Hara was well oriented for person, place, and time. She evidenced no hallucinations, delusions, or grossly inappropriate affect. Her recent and remote memory capacities were intact. Her span of attention and ability to concentrate were limited. She explained proverbs concretely. She answered social judgment questions adequately. Her speech was coherent, generally goal directed, mood congruent, evenly paced, of normal volume, sufficiently detailed, but concrete. Her intellectual functioning seemed average.

. . . .

It is recommended that Ms. O'Hara be regarded to possess adjudicatory competency. She appears not to lack factual and rational understanding of courtroom participants and procedures, skills to assist defense counsel, and understanding of case events necessary to adequately stand trial, enter a plea, and undergo sentencing.

medication and there have been some questions relating to some mental health treatment or mental health questions. Despite all of that, do you feel that you're understanding what we're doing here today and this is in your best interest to go ahead with sentencing?

[O'HARA]: Yes.

THE COURT: Any questions on or any hesitation at all on your part?

[O'HARA]: No.

MR. INGHAM: I want to emphasize, Ms. O'Hara, I didn't suggest this [immediate sentencing] to you?

[O'HARA]: No.

MR. INGHAM: You asked me, and I agreed to explore that possibility with the Court?

[O'HARA]: Yes.

The court sentenced O'Hara consistent with the plea agreement. O'Hara did not appeal.

On June 20, 2013, O'Hara filed an application for postconviction relief (PCR) asserting plea counsel did not contact her treating psychiatrist; he did not properly advise her and pursue a diminished capacity or responsibility defense in regards to the specific-intent offenses charged; and he either failed to inform her that the mandatory seven-year minimum sentence under count 2 could not be reduced for good time, or affirmatively informed her that it could be so reduced. She also generally asserted plea counsel should have prevented her from entering guilty pleas or from going to immediate sentencing after the pleas were entered, based on her distraught mental state and claimed lack of understanding of the plea agreement or the rights she was giving up by pleading guilty and proceeding to immediate sentencing. The State answered and sought summary disposition. O'Hara resisted the motion.[2] The matter was scheduled for trial.

---

[2] O'Hara's attorney and substitute attorney were both allowed to withdraw after the motion for summary dismissal. The record contains no ruling on the motion.

On the date of the PCR trial, O'Hara's counsel asked to leave the record open because the pharmacies from which O'Hara obtained her prescriptions had not yet complied with requests for her medication records. The court denied the request to keep the record open.

At the PCR hearing, O'Hara testified that on the day before the offenses (which occurred in the early morning hours of November 29, 2012), she had taken several medications (Xanax, Depakote, Klonopin, Concerta, Prednisone, Tramadol, and an antibiotic) and she did not remember much of what happened thereafter. She further testified the Depakote and Concerta prescriptions had been previously prescribed "mental medicines." She testified that on the day of the offenses, she had gone to the doctor

> because I was not feeling good and had a broken finger. And the doctor put me on some prescriptions for my breathing and for my broken finger and I remember asking the doctor am I going to be okay taking this with my mental medicines because I was prescribed some pretty heavy medication through my psychiatrist. Well, right after I stopped at the doctor I did go to my psychiatrist and my psychiatrist had added a new prescription for me to go with it and I said the same thing to my psychiatrist. And they said I should be okay taking them together.
> . . . .
> The doctor had prescribed me Prednisone, and Tramadol and antibiotic, I'm not sure the name of that. And then my psychiatrist had added Klonopin that day.
> Q. So you would have taken all of those medications that day? A. Yes.

The new prescriptions added that day were Prednisone, Tramadol, Klonopin, and the antibiotic.

O'Hara testified she had no memory of committing any of the offenses to which she pled. She stated she was aware that under the plea agreement there was a mandatory-minimum sentence. O'Hara asserted, however, she believed

she would be able to shorten that mandatory sentence with good-time credit and had she known credit would not be available she "would have took it to trial."

Plea counsel testified that he would have told O'Hara the mandatory-minimum sentence was seven years, which meant seven years before she would see the parole board. He also stated, had O'Hara gone to trial, she was facing a mandatory-minimum sentence of seventeen and one-half years in prison. Counsel testified he would have explained the difference between an insanity defense and diminished capacity defense to O'Hara and he did not believe either would be successful. He also testified he did not have any concerns about O'Hara's ability to understand the implications of the pleas and sentencing.

The PCR court rejected the ineffectiveness claims and dismissed the application. The court's ruling included a finding defense counsel's "investigation and evaluation of the potential defenses related to the applicant's mental condition was appropriate, as was his evaluation of the potential risks and rewards of proceeding to trial or accepting the best plea agreement that he was able to negotiate under the circumstances presented."

On appeal, O'Hara focuses her dissatisfaction on PCR counsel. She argues "her postconviction relief counsel was ineffective for failing to present the evidence necessary for the court to evaluate the claim that her trial counsel failed to properly evaluate her mental health condition and potential defenses to the charges."

In order to prevail on her claim of ineffective assistance of counsel, O'Hara must prove PCR counsel's performance was defective and resulted in prejudice. *See Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994). To show prejudice, she

must establish "the deficient performance so prejudiced [her] as to give rise to the reasonable probability that, but for counsel's errors, the result of the proceeding would have been different."  *See id.*

We review ineffectiveness claims de novo.  *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001) (noting scope of review).

"When complaining about the adequacy of an attorney's representation, it is not enough to simply claim that counsel should have done a better job.  The applicant must state the specific ways in which counsel's performance was inadequate and identify how competent representation probably would have changed the outcome."  *Dunbar*, 515 N.W.2d at 15 (internal citation omitted).

O'Hara does not identify what evidence could have been presented or how that might have changed the result of the PCR trial.  She specified the prescriptions she had taken.  The record indicates O'Hara specifically asked her doctor and the psychiatrist if the medications could be taken together—she was told yes.  She acknowledges that she does not "believe" she had consumed alcohol or recreational drugs that day.  O'Hara does not explain how the pharmacy records would have changed the result.  O'Hara has failed to establish prejudice.  Consequently, we affirm the district court's denial of her PCR application.

**AFFIRMED.**